**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JULIE ANN PFLEUGER,

       **Plaintiff,**

v.                 18-CV-780

COMMISSIONER OF SOCIAL SECURITY,

       **Defendant.**

**DECISION AND ORDER**

    Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 20. Julie Ann Pfleuger ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 14, 18. For the following reasons, Plaintiff's motion (Dkt. No. 14) is denied, and the Commissioner's motion (Dkt. No. 18) is granted.

**BACKGROUND**

    On December 23, 2014, Plaintiff protectively filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning on March 2, 2012, due to left wrist and shoulder injuries, fibromyalgia, depression, and

back arthritis. Tr. at 12, 198-211, 230.[1] Plaintiff's application was denied at the initial level and she requested review. Tr. at 13, 110-22, 124-37. Administrative Law Judge William Manico ("the ALJ") conducted a hearing on May 19, 2017. Tr. at 13, 29-109. Plaintiff, who was represented by counsel, testified as well as an impartial vocational expert. Tr. at 12, 33-63. On July 26, 2017, the ALJ issued a decision in which he found that Plaintiff was not disabled and therefore, not eligible for benefits. Tr. at 15-32. The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner. Tr. at 1-5. Plaintiff thereafter commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex*

4

rel. N.T.C.B. v. Colvin, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above.  Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 2, 2012, her alleged onset date.  Tr. at 14.  At step two, he found that Plaintiff had the following severe impairments:  obesity, fibromyalgia/myofascial pain, cervical dystonia, status post left wrist surgery, and headaches.  Tr. at 14-17.[2]  The ALJ noted that Plaintiff had been diagnosed with adjustment disorder with depressed mood but deemed the condition non-severe based on the opinion of consulting examiner Susan Santarpia, Ph.D.  Tr. at 15-16.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 1.02 (Major Dysfunction of a Joint(s) Due to Any Cause), and 12.04 (Disorders of the Spine), as well as Social Security Rulings 02-1p (Obesity) and 12-2p (Fibromyalgia).

---

[2] This Court presumes the parties' familiarity with plaintiff's medical history, which is summarized at length in the papers.

5

Tr. at 17. Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b), except she "may only frequently reach and should not engage in jobs that require overhead reaching." Tr. at 18-26.

Continuing to the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work as a baker and dog groomer. Tr. at 26-27. Based on Plaintiff's age (36 years old on her alleged disability onset date), education (at least a high school education), and with the aforementioned RFC, the ALJ found that she could perform work that exists in significant numbers in the national economy, specifically, the jobs of electrical accessories assembler (DOT No. 729.687-010), and photocopy machine operator (DOT No. 207.685-014). Tr. at 27-28. Accordingly, concluded the ALJ, Plaintiff was not under a disability from March 2, 2012, through the date of his decision, July 26, 2017. Tr. at 28.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 14, 18. Plaintiff contends that the ALJ failed to discuss Plaintiff's chronic pain syndrome or left cervical shoulder girdle myofascial pain syndrome at step two (Dkt. No. 14-1, pp. 17-23), and improperly rejected the disability opinions of Plaintiff's treating providers. Dkt. No. 14-1, pp. 23-27. The Commissioner contends that the ALJ explicitly analyzed how Plaintiff's myofascial pain, fibromyalgia, and cervical dystonia affected her ability to work, rendering any step two error harmless (Dkt. No. 18-1, pp. 17-19), and properly assigned "little weight" to the opinions of her treating physicians that

6

she was disabled because their opinions: were inconsistent with their objective findings and treatment; and were offered to determine Plaintiff's entitlement to Worker's Compensation benefits, which employs a significantly different standard than the Social Security Administration (Dkt. No. 18-1, pp. 19-28). Having reviewed the record, this Court finds that the ALJ did not err and that the RFC was substantially supported.

**The ALJ's Alleged Step Two Error**

At step two of the disability analysis, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue,* 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted,* 32 F. Supp. 3d 253 (N.D.N.Y. 2012). The step two severity standard "is *de minimis* and is meant only to screen out the weakest of claims." *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995). At the same time, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor,* 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995) ). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill,* No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)).

Moreover, "when an administrative law judge identifies some severe impairments at [s]tep [two], and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non[-]severe, an[y] error in failing to identify all severe impairments at [s]tep [two] is harmless." *Snyder v. Colvin,* No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen [the] functional effects of impairments erroneously determined to be non-severe at [s]tep [two] are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."); *see also Reices-Colon v. Astrue,* 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"); *Panfil v. Comm'r of Soc. Sec.*, No. 16-CV-947-MJR, 2018 WL 4610531, at *4 (W.D.N.Y. Sept. 26, 2018) ("To the extent the ALJ erred in not including occipital neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two and considered these impairments at the remaining steps.").

As previously noted, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, "a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues," "myofascial pain," a chronic pain disorder in which "pressure on sensitive points in your muscles (trigger points) causes pain in the muscle and sometimes in seemingly unrelated parts of your body," and cervical dystonia, a "painful condition which causes a patient's neck muscles

to contract involuntarily." See https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780; https://www.mayoclinic.org/diseases-conditions/myofascial-pain-syndrome/symptoms-causes/syc-20375444; https://www.mayoclinic.org/diseases-conditions/cervical-dystonia/symptoms-causes/syc-20354123. The ALJ then went on to determine whether these impairments either individually or in combination equaled a Listing and how the combination of all of Plaintiff's impairments impacted her RFC. Tr. at 17-26. In this regard, the ALJ clearly considered how Plaintiff's pain, both generalized and localized to the neck and shoulder, interfered with her ability to perform basic work activities. Plaintiff argues that fibromyalgia, myofascial pain, and cervical dystonia are not synonymous with chronic pain syndrome and left cervical shoulder girdle myofascial pain. Dkt. No. 19, p. 2. While this may be the case, any divergence in the terms used by the ALJ and Plaintiff's doctors does not warrant remand in this case. *Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *3 (W.D.N.Y. Aug. 7, 2018) ("There is no requirement that the language used by the ALJ . . . mirror the terminology used by Plaintiff's physicians, so long as the ALJ properly analyzes Plaintiff's medically determinable impairments.")

This is especially true where, as here, Plaintiff's subjective complaints of pain formed the basis for her various diagnoses. *See, e.g.,* Dkt. No. 14-1, pp. 25-26 (Plaintiff arguing that the symptoms of fibromyalgia are "entirely subjective"). For example, Dr. Su Zhan, Plaintiff's pain doctor, whom she consulted a short time before reapplying for benefits after a previous denial (Tr. at 64-65, 96-100, 198-211), diagnosed

Plaintiff with fibromyalgia only after noting that diagnostic testing had not identified "any specific diagnosis for [Plaintiff's] ongoing left shoulder and left arm pain." Tr. at 566, 581 (stating that Plaintiff "underwent extensive investigation including a shoulder MRI and multiple EMGs, which all came back . . . negative"). Notwithstanding the subjective nature of these conditions, the ALJ appropriately relied on the opinions of Plaintiff's doctors to determine whether her symptoms were as debilitating as she claimed. For example, Dr. Zhan opined that there was a "disproportion between [Plaintiff's] clinical complaints" and imaging findings. Tr. at 758; *see also* Tr. at 499 (Dr. Steven E. Barnes, Plaintiff's treating physician, stating that her complaints "are out of character with the physical findings and there does not appear to be a motivation to return to the work setting").

Based on the foregoing, this Court finds that the ALJ did not err in failing to find chronic pain disorder and left cervical shoulder girdle myofascial pain syndrome at step two. Even if he did, any error was harmless as he considered all of Plaintiff's symptoms at step three and in formulating the RFC.

**The ALJ's Rejection of the Treating Physicians' Disability Opinions**

Plaintiff argues that the ALJ improperly rejected the statements from Dr. Carl Roth, Dr. James Fitzgerald, Dr. Dale Wheeler, Dr. Barnes, and Dr. Zhang that Plaintiff was "75%" or "100%" disabled for Workers' Compensation purposes, and thereby violated the treating physician rule. Dkt. No. 14-1, pp. 23-24. Under this rule, an ALJ should give "controlling weight" to the opinion of a treating doctor, "so long as it 'is well-

10

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may decline to give controlling weight but must provide "good reasons for not crediting the opinion[,]" *Burgess*, 537 F.3d at 129 (quotation marks omitted), "supported by [specific] evidence in the case record." *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y. 2014) (quotation marks and citations omitted) (stating that the "'good reasons' rule exists to ensure that each denied claimant receives fair process").

As an initial matter, this Court notes that the ALJ did not reject the doctors' statements, but afforded them "little weight," because they were inconsistent with the providers' objective observations and treatment of Plaintiff. Tr. at 25-26. By way of example, Dr. Barnes and Dr. Roth claimed that Plaintiff had a "temporary total" or "temporary moderate to marked" disability. Tr. at 305, 323-24, 328-29, 333-36, 339-40, 344-45, 354-55, 358-59, 365-66, 385-86, 459-60, 463, 469-70, 475-76, 481-82, 487-88, 491-92, 497-98, 501-02, 506-07, 516-17, 520-21, 527-28, 530-31, 535-36, 540-41, 544-45, 548-49, 557-58, 561-62, 568-70, 575-77, 582-84, 590-91. However, both doctors noted, contemporaneous to their disability opinions, that Plaintiff had only tenderness and reduced range of motion in her left, non-dominant wrist or shoulder due to sprain, with no symptom in her neck, back, or legs. Tr. at 305, 323-24, 328-29, 333-36, 339-40, 344-45, 354-55, 358-59, 365-66, 385-86, 459-60, 463, 469-70, 475-76, 481-82, 487-88, 491-92, 497-98, 501-02, 506-07, 516-17, 520-21, 527-28, 530-31, 535-36, 540-41, 544-45, 548-49, 557-58, 561-62, 568-70, 575-77, 582-84, 590-91. Dr. Roth stated that Plaintiff only

11

had "[m]ildly limited range of motion in her neck." Tr. at 318-19. As previously noted, Dr. Barnes admitted that Plaintiff's subjective complaints were inconsistent with her "physical findings" and she did not seem motivated to return to work. Tr. at 499.

Objective evidence did not support the conclusion that Plaintiff was disabled, in some cases, despite her efforts to characterize it as supportive of a disability finding. For example, Plaintiff reported to one of her doctors that "she ha[d] an EMG study which displays that she had ulnar neuropathy," (Tr. at 515), but her provider reviewed the study and opined that it was negative and normal. Tr. at 525. Multiple nerve conduction studies showed no evidence of neuropathy or radiculopathy. Tr. at 349-52, 394-99. Despite her alleged debilitating arm symptoms, both Dr. Barnes and Dr. Roth noted that Plaintiff "tend[ed] to overuse [her wrist] taking care of [her] baby." Tr. at 318, 323, 328, 339, 354, 358. And Dr. Zhan opined that "[Plaintiff's] clinical complaints" were "disproportionate" to the objective tests. Tr. at 758. Where, as here, the opinion of a treating physician is internally inconsistent, inconsistent with other evidence, or "based on [the plaintiff's] subjective complaints," the ALJ may discount it or afford it less than controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Fagner v. Berryhill*, No. 14-CV-6569, 2017 WL 2334889, at *8 (W.D.N.Y. May 30, 2017) (internal citations omitted).

Moreover, Dr. Barnes', Dr. Roth's, Dr. Fitzgerald's, and Dr. Wheeler's disability opinions were offered for Workers' Compensation purposes, and therefore, were not entitled to any significant weight in Plaintiff's Social Security proceeding. "[T]he

12

SSA's disability process is different from the process for determining entitlement to Workers' Compensation benefits, and it employs significantly different standards." *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *3 (W.D.N.Y. May 24, 2018); *DeRosia v. Colvin*, No. 16-CV-6093P, 2017 WL 4075622, at *20 (W.D.N.Y. Sept. 14, 2017) (citing cases and noting that "it is well settled law that an ALJ need not give controlling weight to a treating physician's opinions concerning a claimant's 'disability' in connection with a Worker's Compensation proceeding") (internal citations omitted). Finally, the ALJ was not legally bound to adopt any of the doctor's "disability" opinions as "the ultimate finding of whether a claimant is disabled and cannot work . . . [is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotations and citations omitted).

Based on the foregoing, this Court finds that the ALJ did not err in declining to give controlling weight to the cited disability opinions, as they were based primarily on Plaintiff's subjective complaints, were inconsistent with the doctors' contemporaneous medical findings, and were offered for purposes of determining her Workers' Compensation claims. It is, in fact, the role of the ALJ to compare specific medical opinions against the record as a whole, and to reject those opinions that are inconsistent with the evidence. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d Cir. 2017) (holding that the ALJ did not violate the "treating physician" rule, where ALJ determined that the treating doctor's treatment notes often stated that the claimant's mood was "stable" or "good," contradicting the doctor's restrictive RFC assessment). Given that Plaintiff's objective

13

examinations were largely unremarkable and her treatment history conservative, this Court finds that the ALJ properly evaluated the doctors' "disability" opinions. *Overstreet v. Berryhill*, 335 F. Supp. 3d 500, 504 (W.D.N.Y. 2018) (holding that Plaintiff's largely unremarkable physical and mental examination findings and conservative treatment history were relevant factors in determining whether she was disabled); *Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016) (holding that the ALJ appropriately declined to give great weight to a portion of the treating physician's opinion, which the ALJ found to be inconsistent with the doctor's examination findings and other information in the record).

**The RFC is Supported by Substantial Evidence**

The ALJ's finding that Plaintiff could perform light work with a reaching limitation is supported by the objective findings of nearly all of the medical providers throughout the relevant period. For example, in May of 2012, Dr. Roth reported that Plaintiff sprained her wrist on March 5, 2012, but was "getting better" and had an "improved response" with treatment and medication. Tr. at 333-35. In July of 2012, Plaintiff reported to her physical therapist that her pain was only a 3-4/10 and localized in her wrist. Tr. at 377. Dr. Wheeler opined in December of 2012 that Plaintiff's range of motion in her wrist was only "slightly limited." Tr. at 392. In a November 4, 2013 treatment note, Dr. John Pollina and PA Cheryl Tanksi stated that Plaintiff walked normally and had normal muscle strength, coordination, and reflexes and sensation in both arms, and opined that her reported pain warranted only conservative treatment. Tr. at 515, 524-25. And in July 2014, Dr. Todd Demmy stated that Plaintiff had reduced

range of motion in her left arm, but she had "0" pain, and could "carry on normal activit[ies]" with only "minor symptoms of disease." Tr. at 554-55.

Consulting examiner, Donna Miller, D.O., found in March of 2015, that Plaintiff: retained the ability to walk and stand normally, squat the full range, rise from a chair, and climb on and off the table without difficulty (Tr. at 609); had reduced range of motion in her neck and left shoulder, but normal range of motion in her right shoulder, elbows, forearms, wrists, hips, knees, and ankles (Tr. at 610); had normal neurological function in her arms and legs, normal grip strength and finger dexterity in both hands (Tr. at 610); and had only mild to moderate limitations in heavy lifting, bending, carrying, and pushing (Tr. at 611). Plaintiff contends that Dr. Miller's opinion was stale, but this Court does not agree. Dr. Miller examined Plaintiff more than three years into the five-year alleged period of disability, after she reported worsening pain symptoms to Dr. Zhan in September of 2014. Tr. at 566. Plaintiff contends that her condition worsened after this time, but as discussed above, only Plaintiff's subjective complaints suggest that her condition actually worsened. Even Dr. Zhan, a pain specialist, opined that Plaintiff's complaints were "disproportionate" given the normal MRI findings regarding her cervical and thoracic spine. Tr. at 758.

Plaintiff also reported that she performed activities during the relevant period that contradict her claim that she was disabled, such as caring for her baby and two other young children daily, doing light cooking, cleaning her house, washing laundry, shopping, driving, socializing with friends and family, reading, and watching television.

15

Tr. 318, 323, 328, 339, 344, 354, 358, 603, 605, 609, 743, 746. It was permissible for the ALJ to consider these activities of daily living in assessing Plaintiff's RFC. 20 C.F.R. §§ 404.1529 and 416.929; *see Cruz v. Colvin*, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017) (holding that an ALJ may discount a treating physician's opinion based on a claimant's activities of daily living); *Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ correctly found Poupore was not disabled because he was able to care for his one-year-old child, change diapers, vacuum, wash dishes, occasionally drive, watch television, read, and use the computer).

This Court finds that the record contains a complete medical history, with no obvious gaps, and that substantial evidence supports the RFC. Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is hereby DENIED, and the Commissioner's motion for

16

Judgment on the pleadings (Dkt. No. 18) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
               March 5, 2020

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**